1 | R. Duane Westrup (State Bar No. 58610)
Phillip R. Poliner (State Bar No. 156145)
2 | Christine C. Choi (State Bar No. 205656)
WESTRUP KLICK, LLP
3 | 444 West Ocean Boulevard, Suite 1614
Long Beach, California 90802-4524
4 | Telephone: (562) 432-2551
Telecopier: (562) 435-4856

5 | Attorneys for Plaintiff DENISE ALBERTO

6

7

8 | UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10 | SACRAMENTO DIVISION

11

12 | DENISE ALBERTO, individually and on behalf of others similarly situated,

Case No. 2:07-CV-01895-WBS-DAD

13 | Honorable William B. Shubb

14 | Plaintiff,

**CLASS ACTION**

15 | v.

**JOINT MOTION FOR: 1. PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2. CONDITIONALLY CERTIFYING THE CLASS FOR SETTLEMENT PURPOSES ONLY; 3. APPROVAL OF THE FORM AND METHOD OF NOTICE; 4. ESTABLISH OPT-OUT, OBJECTION, AND CLAIM PROCEDURE; AND 5. SCHEDULING A FINAL FAIRNESS HEARING FOR OCTOBER 27, 2008**

16

17 | GMRI, INC., dba OLIVE GARDEN, and DOES 1 through 100, inclusive,

18

19

20 | Defendants.

21 | [Declaration of Phillip R. Poliner and [Proposed] Order filed concurrently herewith]

22 | [Telephonic Hearing Requested]

23 | Hearing Date: June 23, 2008
Time:         2:00 pm
24 | Courtroom:    5

25

26

27

28

i
JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  TO THE COURT AND TO ALL INTERESTED PARTIES AND TO THEIR
2  ATTORNEYS:

3      **PLEASE TAKE NOTICE** that on June 23, 2008, at 2:00 p.m., or as soon thereafter
4  as counsel can be heard in Courtroom 5 of the United States District Court, Eastern District
5  (Sacramento Division), located at 501 I Street, Sacramento, California 95814, Plaintiff
6  Denise Alberto ("Plaintiff"), will move for an order seeking: (1) preliminary approval of the
7  settlement; (2) conditional certification of the defined class for purposes of settlement, (2)
8  approval of the proposed class notices and method of service of the class notices, (3)
9  approval of the proposed procedure for the Class Members to submit a Claim or Exclusion
10 Form and/or object; and (5) scheduling a hearing for final approval of the settlement on
11 October 27, 2008.

12     This motion is brought pursuant to Federal Rules of Civil Procedure, Rule 23(e) on
13 the grounds that Plaintiff has reached a settlement with Defendant GMRI, Inc., dba Olive
14 Garden ("Defendant") which the parties believe provides fair, just and reasonable
15 compensation for the Class Members. The parties desire to give notice of the settlement to
16 Class Members and to hold a hearing on October 27 2008, as to whether the settlement
17 should be finally approved.

18     This motion is based on the accompanying Memorandum of Points and Authorities,
19 the declaration of Phillip R. Poliner, the [Proposed] Order Granting Preliminary Approval of
20 Class Action Settlement and all other records and papers on file in this action.

21
22 Dated: May 9, 2008     WESTRUP KLICK LLP
23
24                                           By: _____
25                                                PHILLIP R. POLINER
26                                                Attorneys for Plaintiff DENISE ALBERTO
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

This is a class action brought by servers employed at Olive Garden restaurants in California by Defendant GMRI, Inc., dba Olive Garden ("Defendant"). The graveman of Plaintiff's putative class action complaint is that Defendant failed to properly pay reporting time pay ("RTP") in violation of Section 5 of Wage Order 5-2001 and failed to timely pay final wages upon termination in violation of Labor Code §§ 201 and 202. Based on the same reporting time pay violations, Plaintiff alleges (1) failure to pay the legal minimum wage in violation of Section 4 of the Wage Order brought under California Labor Code § 1194(a); (2) failure to provide accurate itemized statements in violation of California Labor Code § 226; (3) violation of California's unfair competition law (Business and Professions Code § 17200, et seq.). Plaintiff also seeks waiting time penalties under California Labor Code § 203 for its failure to timely pay all final wages upon, termination, including reporting time pay. See Decl. of Poliner, ¶ 3.

Prior to reaching a resolution, the parties propounded discovery and exchanged thousands of documents, interviewed numerous class members, opposed motions, undertook expert analyses, and mediated the case before a well respected mediator, David Rotman, which resulted in the present class action settlement. See Decl. of Poliner, ¶ 4.    In    short, the settlement provides that Defendant will contribute $700,000 to resolve any and all issues relating to this litigation. See Decl of Poliner, ¶ 5.

**II.    BACKGROUND**

Section 5 of Industrial Welfare Commission ("IWC") Orders 1 through 16, "guarantee[s] at least partial compensation for employees who report to their job expecting to work a specified number of hours and who are deprived of that amount of work because of inadequate    scheduling    or    lack    of    proper    notice    by    the    employer..."[See www.dir.ca.gov/dlse/FAQ_ReportingTimePay.html].

According to the DLSE Manual § 45.1.2.1, "The reporting time premium requirement

---

1

1  is designed to discourage employers from having employees report unless there is work
2  available at the time of the reporting and is further designed to reimburse employees for
3  expenses incurred in such situations."

4         Under Section 5 of the IWC wage orders, when "an employee is required to report to
5  work and does report, but is not put to work or is furnished less than half said employee's
6  usual or scheduled day's work, the employee shall be paid for half the usual or scheduled
7  day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the
8  employee's regular rate of pay..." See, 8 California Code of Regulations 10405(A).1 Labor
9  Code §§ 201 and 202 provide that an employee's unpaid wages are due immediately upon
10  termination of employment or within 72 hours after termination if the employee resigns
11  without giving 72 hours advance notice.

12         In order to analyze the extent of the alleged RTP violations, if any, and timely
13  payment of final wages, Defendant produced to Plaintiff a sampling of time card records, pay
14  records, and schedules (if retained) for current and former employees for 28 restaurants.
15  Based on an analysis of the employees' "usual days work", Plaintiff calculated (Defendant
16  disagrees) that the average employee was entitled to 1 hour of pay for every 27 shifts (plus
17  the possibility of waiting time penalties) for Defendant's alleged RTP violations.

18         Throughout this case, Defendant has asserted a variety of defenses and denies any
19  wrongdoing or legal liability with regard to any and all of the claims.  Defendant contends
20  that the case would be difficult to certify (Plaintiff disagrees).  Based on the server interviews
21  conducted and data analyzed, Defendant further contends (Plaintiff disagrees) that: (1) the
22  Company had a practice of furnishing servers with at least half their usual day's work and
23  putting servers to work when they reported to work on scheduled workdays; (2) the
24  Company's records demonstrate that the servers in the sample actually worked at least half
25  their usual day's work on 95% of all days worked; and (3) to the extent any servers did not
26  work half their usual day's work, it was not because the Company failed to furnish the work,

27
28  1 These reporting time pay requirements are not applicable in certain circumstances, such as where
there is a work disruption caused by an "Act of God or other cause not within the employer's control." Id. at
5(C).

2

1 but because the server voluntarily chose to work a shorter shift for a variety of personal

2 reasons or one of the exceptions to the reporting time pay requirements was applicable.

3        Defendant nevertheless desires to settle the class action and the claims asserted in the

4 class action on the terms and conditions herein set forth in the settlement agreement, for the

5 purpose of avoiding the burden, expense, and uncertainty of continuing litigation, and for the

6 purpose of putting to rest the controversies advanced by the litigation.  Should this case not

7 resolve, the parties believe that there are legitimate factual and legal issues in dispute that

8 will undoubtedly be vigorously contested in any future legal proceeding.

9        As explained above (and in more detail below), the present class action settlement

10 was reached after arms-length negotiations by experienced counsel on both sides. The terms

11 of this settlement, as outlined below, are a fair and reasonable result for the Settlement Class

12 achieved by experienced Plaintiff's counsel with the aid of an experienced mediator, David

13 Rotman.

14

15 **III.     SUMMARY OF SETTLEMENT TERMS**

16        In short, the settlement provides that Defendant will contribute $700,000 to resolve

17 any and all issues related to this litigation.

18        The "Settlement Class" shall be defined as: "All servers, including server breakers,

19 who work or worked for Defendant GMRI at any Olive Garden restaurant in California

20 ("Class Members"), at any time from August 3, 2003, through June 10, 2008."  See Decl. of

21 Poliner, ¶ 5a.

22        A minimum fund of approximately $ 435,000 (after deduction from the fund of

23 administration costs, class representative enhancement, payroll taxes and attorneys' fees and

24 costs) will be made available to the Class Members, all of which will be distributed to Class

25 Members.  The fund of money will be allocated to the class members who timely complete

26 and return a claim form.  The allocation will be based on the number of work months each

27 class member worked during the class period.  To the extent that class members do not

28 submit a claim form for their provisional share of the fund, the unclaimed share of the fund

shall be redistributed to the class members who do make claims on a proportional basis. See Decl. of Poliner, ¶ 5b.

The Settlement Agreement provides that subject to Court approval, Plaintiff shall receive an enhancement of $5,000 for acting as the class representative. Plaintiff actively cooperated in the prosecution of this action and took affirmative steps to monitor the progress of this case on behalf of all potential class members. Plaintiff gathered information reviewed documents and participated in meetings and mediation. This enhancement is for participating and bearing the risk of litigation and includes the above payout. See Decl. of Poliner, ¶ 5c.

The Settlement Agreement also provides that Defendant will not oppose the motion of Plaintiff's attorneys, the law firm of Westrup Klick, LLP, for an award in the amount of $150,000, for attorneys' fees and up to $10,000 for out of pocket expenses incurred in litigating this class action. See Decl. of Poliner, ¶ 5d. In Williams vs. MGM-Pathe Communications Co., 129 F. 3d 1026 (9th Cir., 1997), the Ninth Circuit held that attorneys' fees should be calculated as a percentage of the total fund, or using the "lodestar" approach. The court went on to indicate that the benchmarks for an attorney's fees award in a successful class action is twenty-five percent of the total fund. Plaintiff's attorneys are asking for less than that permitted by law. In return for the above, the complaint will be dismissed with prejudice as to Class Members who do not opt-out. A judgment will be entered regarding the settlement class, and they will be bound by the release contained in the Settlement Agreement (as described in the Notices to the Class members). The Settlement Agreement is attached as Exhibit "A" to the Declaration of Phillip R. Poliner. See Decl. of Poliner, ¶ 6.

To set the procedure in motion to obtain final approval of the settlement, the parties now move for an order: (1) preliminarily approving the Settlement; (2) conditionally certifying the class for settlement purposes only; (3) approving a form and method of service of notice of this action and the proposed settlement; (4) approving a form and method for

class members to submit a claim or exclusion form and/or object; and (5) scheduling a hearing regarding final approval of the settlement for October 27, 2008.

## IV.   THE PROPOSED SETTLEMENT SHOULD BE GIVEN PRELIMINARY APPROVAL AND THE APPROPRIATE PROCEDURES SHOULD BE IMPLEMENTED LEADING TO FINAL APPROVAL OF THE SETTLEMENT.

### A.   Procedural Overview

Based on arms-length negotiations, both parties have reached a compromise and request that the Court:

1)   Preliminary approve the settlement;

2)   Conditionally certify the class for settlement purposes as defined in the Settlement Agreement;

3)   Approve the form and method of notice to be sent to the potential members of the class;

4)   Approve a procedure for the class members to submit a claim or exclusion form and/or object; and

5)   Schedule a formal fairness hearing for October 27, 2008, which will be included in the notice to be sent to the members of the class.

### B.   Preliminary Approval of the Settlement Is Appropriate

For the purpose of preliminary approval, the Court should concern itself with intermediate questions, including (1) whether the proposed Settlement was fairly reached between the defendant and the representative plaintiff; (2) whether the proposed Settlement is sufficiently fair and reasonable for submission to members of the prospective class for acceptance or rejection; and (3) whether proper procedures were adopted for giving notice to members of the proposed class. (Philadelphia Housing v. American Radiator & Standard Sanitary Corp., 323 F.Supp. 364, 372 (E.D.Pa., 1970).  To grant preliminary approval of this

class action settlement, the court need find only that the settlement falls within the range of possible final approval, also described as "the range of reasonableness." See, In Re Traffic Executive Ass'n-E.RR., 627 F.2d 631, 633-34 (2nd Cir., 1980); 4 Newberg on Class Actions § 11:25 (4th ed.), Annotated Manual for Complex Litigation §§ 21.632, 21.633 (4th ed.).

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  See 4 Newberg on Class Actions § 11:41 (4th ed.) (and cases cited); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 9th Cir., 1997).  Moreover, the Court should give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasonable judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  Hanlon v. Chrysler Corp. 150 F.3d 1011, 1027 (9th Cir., 1998) (citation omitted).  See also Murillo v. Texas A & M Univ. Sys., 921 F. Supp. 443, 445 (S.D.Tex., 1996) (there is an "initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class.").

Here, the terms of the Settlement Agreement were fairly reached as the result of the arms-length negotiations between Plaintiffs' counsel, Defendant's counsel, and an experienced mediator. There is no question that the settlement is in the range of reasonable approval insofar as it provides a substantial benefit to the members of the class.  As discussed above, the settlement provides that a net amount of at least $435,000 will be distributed to the Class. Based on the potential recovery and the costs and risks of litigation, Plaintiff's counsel believes that this settlement is well within the range of reasonableness. See Decl. of Poliner,

1  ¶ 6.  Thus, it is clear that this settlement should be preliminarily approved because the

2  settlement is fair on its face and worth submitting to the class members. In re Corrugated

3  Container Antitrust Litig., 643 F2d 195, 212 (5th Cir., 1981).

4

5

6  **C.    The Settlement Class Should Be Conditionally Certified**

7  Certification of a settlement class is a regular feature of class action litigation, and

8  an approved procedure which ought to be followed in this case. See 4 Newberg on Class

9  Actions §11:27 (4th ed.).  The potential members of the class share a community of interest in

10  having this Court determine whether the proposed Settlement is fair, reasonable, and in their

11  best interests.

12

13  Based on the Settlement, which is advantageous to the Class Members, the Court

14  should conclude that Plaintiff and members of the class meet the prerequisites for class

15  certification pursuant to Federal Rules of Civil Procedure, Rule 23.  If the Court determines

16  at the final settlement approval that the Settlement should not be finally approved, the

17  temporary settlement will be dissolved by that determination without the need for further

18  motion or order, and the parties agree that no class should be certified for any purpose unless

19  and until plaintiff files a motion for class certification and such is granted by the Court.

20

21  Numerous courts have certified a settlement class.  For example, In re Drexel

22  Burnham Lambert Group, Inc., 960 F.2d 285 (2nd Cir., 1992), cert. dismissed, 506 U.S. 1088,

23  122 L. Ed. 497, 113 S. Ct 1070 (1993) the parties entered into a tentative settlement before a

24  class was certified.  After a hearing, the "district court issued an order certifying the class and

25  approving the settlement agreement." Id. at 289. The Second Circuit affirmed.  Similarly, in

26  Mars Steel Corp. v. Continental Ill Nat Bank & Trust Co., 834 F.2d 677, 680 (7th Cir., 1987),

27  the District Court gave preliminary approval to a settlement and "at the same time certified

28

the suit as a class action for settlement purposes." The settlement and class certification were affirmed by the Seventh Circuit. See also, In re Beef Industry Antitrust Litigation, 607 F.2d 167, 178 (5th Cir., 1979) (holding that "a tentative or temporary settlement class was proper"), cert. denied, 452 U.S. 905 (1981); Alaniz v. California Processors, Inc., 73 F.R.D. 269, 278 (N.D.Cal., 1976) ("the use of the tentative settlement class procedure was appropriate in this case"), aff'd, 572 F.2d 657 (9th Cir.), cert. denied, 439 U.S. 837 (1978). Likewise, under the factual circumstances presented herein, conditional certification of a temporary class for settlement purposes is warranted.

### D.   Plaintiff Meets The Prerequisites to a Class Action Under **FRCP**, Rule 23

Federal Rules of Civil Procedure, Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

#### 1.   The Class is So Numerous That Joinder of All Members is Impracticable

The class must be so numerous that joinder of all members individually is "impracticable." Federal Rules of Civil Procedure, Rule 23(a)(1). It need not be shown that the number is so large that it would be impossible to join every class member; "impracticability" does not mean "impossibility." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-914 (9th Cir., 1964). "Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members." See, Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y., 1998) (emphasis added). See also, Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2nd Cir., 1995)

[numerosity presumed at level of 40 members].   Here, there are over 18,000 servers during the class period.     A potential class of at least 18,000 is so numerous that joinder of all members is clearly impracticable. See Decl. of Poliner, ¶ 7a.

Additionally, because Labor Code § 226(b) requires employers to maintain records of current and former employees, not only is the proposed class numerous, it is also ascertainable.[2]     Pursuant to the settlement, Defendant shall provide the third party administrator with the last known address it maintained for each class member. See Decl. of Poliner, ¶ 7b.

## 2.     There are Questions of Law and Fact Common to the Class

There must be "questions of law or fact common to the class." Federal Rules of Civil Procedure, Rule 23(a)(2). The "common question" requirement can be satisfied **either** by a shared legal issue with divergent factual predicates or by a common core of salient facts with disparate legal remedies. Id. In other words, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir., 2003).

As stated by the United States Supreme Court, "Class relief is 'particularly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class." General Tel. Co. v. Falcon, 457 U.S. 147, 155, (1982); 102 S.Ct. 2364, 72 L.Ed.2d 740. The following section is submitted by Plaintiff.

---

[2]Labor Code § 226 provides that "An employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by subdivision (a) shall afford current and former employees the right to inspect or copy the records pertaining to that current or former employee, upon reasonable request to the employer."

Here, there are factual and legal questions common to the class and that predominate over questions affecting individual members. Such questions include but are not limited to:

a)  Whether Defendant failed to pay reporting time compensation to members of the Class in violation of Section 5 of IWC, Order No. 5-2001;

b)  Whether Defendant, in failing to pay reporting time compensation, also violated Labor Code § 1194;

c)  Whether Defendant's reporting time pay violations constitutes an unfair, unlawful, or fraudulent business practice within meaning of Business and Professions Code § 17200;

d)  Whether Defendant's failed to promptly and timely pay compensation owing to class members upon their termination of their employment, in violation of California Labor Code §§ 201 and 202; and

e)  Whether Defendants are liable to members of the class members for waiting time penalties pursuant to California Labor Code § 203, based upon Defendants' willful retention of compensation owing to members of the class upon the termination of their employment.

See Decl. of Poliner, ¶ 7c.

### 3.  The Claims of the Plaintiff are Typical of the Claims of the Class

Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent. Lightbourn v. County of El Paso, Tex., 118 F.3d 421, 426 (5th Cir., 1998). Here, typicality is established because Plaintiff is a member of the class which she seeks to represent and her claims that Defendant failed to pay her reporting time pay compensation and she was not timely paid compensation upon her termination apply equally to absent class members. See Decl. of Poliner, ¶ 7d.

10

**4.     Plaintiff and Class Counsel will Fairly and Adequately Protect the Interests of the Class**

The requirement of adequate representation has two components. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir., 1978). First, the court must determine whether the representative plaintiffs and their counsel have any conflicts of interest with other class members. Id. Second, the court must satisfy itself that the representative plaintiffs and their counsel will prosecute the action fairly, vigorously and competently on behalf of the class. Id. As detailed in the attached Declaration of Phillip R. Poliner, Plaintiff's counsel is not aware of any conflicts of interest with other class members, and Plaintiff's counsel has served as lead or co-counsel in numerous other class actions in state and federal court. See Decl. of Poliner, ¶ 8.

**E.     The Form and Method of Service of Class Notice Should be Approved.**

If preliminary approval is granted, notice of the proposed dismissal or compromise must be given to all class members in such a manner as the Court directs. See, Federal Rules of Civil Procedure, Rule 23(e).     Accordingly, the parties seek Court approval of the proposed form of Notice to be provided to the potential members of the class, as well as approving the "Claim" and "Exclusion" forms. (Attached as Exhibits "B," "C," and "D" to the declaration of Phillip R. Poliner filed in support of the present motion). See Decl. of Poliner, ¶ 9. "When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have classwide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." See 4 Newberg on Class Actions §11:30 (4th ed.). The class notice should fairly apprise class members of the gist of the claims raised in the

11

1    action, the basic terms of the proposed settlement, the options available to class members

2    (e.g., submitting a claim form, opting-out and/or objecting), explain the procedures for

3    allocating and distributing settlement funds, indicating a time and place of the hearing to

4    object to the settlement, indicating the time and place for the court to consider approval of

5
6    the settlement and prominently display the address and phone number of class counsel and

7    the procedures for making inquires. See Marshall v. Holiday Magic, 550 F2d 1173, 1178 (9th

8    Cir., 1977).  As seen in the proposed notice, these standards are more than met. In fact, the

9    proposed notice goes beyond those standards.

10          The proposed notice, which combines both notice of class certification and

11    settlement, has been routinely approved by courts. See, Weinberger vs. Kendrick (2nd Cir.

12    1983) 698 F.2d 61, 72. See Decl. of Poliner, ¶ 9.

13
14          In addition, California authority generally requires service of class notice by mail or

15    similar reliable means. (Chance v. Superior Court 58 Cal.2d 275, 290 (1962); Cartt v.

16    Superior Court 50 Cal. App.3d 960, 972(1975).)  Due process does not require that a class

17    member actually receive a notice but, rather, requires a procedure reasonably certain to reach

18    class members. (Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 391 (1950).)

19
20    Fontana v. Elrod, 26 F.2d 729, 732 (7th Cir., 1987) provides that if appropriate notice is

21    given, class members will be bound by the judgment even if they never actually receive the

22    notice.

23          In this case, the parties agreed to use a neutral third party claims administrator to

24    administrate the settlement. The administrator will mail individual notices to potential

25    members of the class at the last known address of each employee. If any notices are returned,

26    a search will be performed to try and determine the class member's correct address.

27    Thereafter, the administrator will re-mail the notice to any new addresses obtained for any

28

1   returned notices. In addition, a reminder postcard will be mailed to any class members who

2   do not return a claim or exclusion form by twenty (20) days before the claim deadline. This

3   method of service is reasonably calculated to reach the members of the class by the best

4   means practicable under the circumstances, and should, therefore, be approved. See Decl. of

5   Poliner, ¶ 10.

6

7

8   **F.      The Court Should Schedule A Hearing On Final Settlement Approval**

9          Following adequate notice to the class members, a hearing is held on the proposed

10  settlement.  Annotated Manual Complex Litigation § 21.632 (4th ed.).  Accordingly, it is

11  requested that the Court schedule a hearing on final approval of the settlement, and set a cut-

12  off date for the members of class to opt-out, object, and provide a "Claim" form. The hearing

13  on final settlement approval should be scheduled now so that the date can be disclosed in the

14  class notice. Cut-off dates for submission of opt-out requests, objections, and claim forms are

15  needed so that the parties can determine, at some specified date, the members of the class and

16  which members are entitled to share in the settlement. The Administrator is prepared to cause

17  notice to be mailed to the potential members of the class within 30 days of preliminary

18  approval of this settlement.  Pursuant to the Settlement Agreement, the parties suggest that

19  the cut-off date for mailing an opt-out, claim form and submitting objections be set for a date

20  45 days after the date the notices are mailed.  This will provide sufficient time for class

21  members to decide whether or not they wish to participate in the class action and the

22  settlement. To this end, Plaintiff recommends that the hearing on final approval of the

23  settlement be set for October 27, 2008. Attached as Exhibit "E" to the Declaration of Phillip

24  R. Poliner is a time-line of events.  See Decl. of Poliner, ¶ 11

25  / / /

26  / / /

27  / / /

28  / / /

1  **V.    CONCLUSION**

2      For the reasons stated above, the Court should: (1) preliminarily approve the

3  settlement; (2) conditionally certify the class as defined in the Settlement Agreement for

4  settlement purposes; (3) approve the form and method of service of notice; (4) establish a

5  procedure for class members to submit a Claim or Exclusion Form and/or object; and (5)

6  schedule a hearing on final approval of the settlement for October 27, 2008 as set forth more

7  fully in the [Proposed] Order filed concurrently herewith. See Decl. of Poliner, ¶ 12

8

9  Dated: May 9, 2008                        WESTRUP KLICK LLP

10

11                                           By: _____

12                                               PHILLIP R. POLINER

13                                           Attorneys for Plaintiff DENISE ALBERTO

14

15                                           PAUL HASTINGS JANOFSKY & WALKER

16

17                                           By: _____

18                                               JAN E. EAKINS
                                             Attorneys for Defendant GMRI, INC.,
19                                           dba OLIVER GARDEN

20

21

22

23

24

25

26

27

28

**V.    CONCLUSION**

For the reasons stated above, the Court should: (1) preliminarily approve the settlement; (2) conditionally certify the class as defined in the Settlement Agreement for settlement purposes; (3) approve the form and method of service of notice; (4) establish a procedure for class members to submit a Claim or Exclusion Form and/or object; and (5) schedule a hearing on final approval of the settlement for October 27, 2008 as set forth more fully in the [Proposed] Order filed concurrently herewith. See Decl. of Poliner, ¶ 12

Dated: May 12, 2008                         WESTRUP KLICK LLP


                                            By: _____

                                                    PHILLIP R. POLINER
                                            Attorneys for Plaintiff DENISE ALBERTO


                                            PAUL HASTINGS JANOFSKY & WALKER


                                            By: _____

                                                    JAN E. EAKINS
                                            Attorneys for Defendant GMRI, INC.,
                                            dba OLIVER GARDEN