UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DENISE ALBERTO, individually
and on behalf of others
similarly situated,

        Plaintiff,

   v.

GMRI, INC., d/b/a OLIVE
GARDEN, and DOES 1 through
100, inclusive,

        Defendants.

_____/

NO. CIV. 07-1895 WBS DAD

MEMORANDUM AND ORDER RE: FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT

----oo0oo----

Plaintiff Denise Alberto brought this putative class action lawsuit against defendant GMRI Inc. d/b/a Olive Garden alleging violations of (1) Industrial Welfare Commission Order 5-2001, Cal. Code Regs. tit. 8, § 11070, (2) the California Labor Code, Cal. Lab. Code §§ 201-203, 226, 1194, and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210. Presently before the court is plaintiff's motion for final approval of class action settlement.

1

I.    Factual and Procedural Background

Defendant is a large casual dining restaurant company that owns, operates, and manages the restaurant chain known as the Olive Garden.  (Compl. ¶ 6.)  From approximately November 2003 to September 2006, defendant employed plaintiff as a server at its Olive Garden location in Vallejo, California.  (Id. ¶ 10.)

On July 31, 2007, plaintiff filed a putative class action complaint in state court claiming that defendant failed to (1) pay employees the legal minimum wage, (2) properly address "reporting time pay,"[1] and (3) provide accurate itemized statements.  (Id. ¶ 2.)  Pursuant to 28 U.S.C. § 1441(b), defendant subsequently removed the case to this court on September 12, 2007, based on diversity jurisdiction, 28 U.S.C. § 1332.  (Def.'s Notice of Removal 3:5-6.)

After plaintiff amended her Complaint once as a matter of course, defendant filed motions to dismiss and/or strike portions of plaintiff's First Amended Complaint.  Before the court could hear these motions, however, the parties engaged in early mediation and thereafter notified the court that they had

_____

[1]    Section 5 of the Industrial Welfare Commission Wage Orders effectively delineates "reporting time pay" by providing that

> an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

Cal. Code Regs. tit. 8, § 11070(5)(A).

2

agreed to settlement terms.

The parties filed a joint motion for preliminary approval of class action settlement on May 12, 2008.  In its Order granting the preliminary approval of the settlement, the court provisionally certified the following class:  "All servers, including server breakers, who work or worked for defendant at any Olive Garden restaurants in the state of California from August 3, 2003, through June 10, 2008."  The court appointed plaintiff Denise Alberto as class representative, the law firm Westrup Klick LLP as class counsel, and Simpluris Inc. as settlement administrator.  The court also approved the class claim form, exclusion form, and notice of settlement, and directed class counsel to file with the court, within thirty-one days prior to the final fairness hearing, the settlement administrator's declaration setting forth the services rendered, proof of mailing, and list of all class members who opted out of the settlement.  The court set the final fairness hearing for October 26, 2008, at 2:00 p.m.

Due to certain concerns expressed by the court in its Order, the parties requested clarification regarding the class-distribution formula for the net payment and participated in two status conferences before the court.  Pursuant to the court's Minute Order of July 7, 2008, the parties submitted an alternative proposed class-distribution formula and revised notice and claim forms.  The court approved the revised notice and claim forms and continued the date of the final fairness hearing from October 27, 2008, to November 10, 2008, at 2:00 p.m.

After conducting the final fairness hearing and

3

1  carefully considering the settlement terms, the court now

2  addresses whether the class should receive final certification;

3  whether the proposed settlement is fair, reasonable, and

4  adequate; and whether class counsel's requests for attorneys'

5  fees and costs, as well as an incentive payment for the named

6  plaintiff, should be granted.

7  II.  <u>Discussion</u>

8           The Ninth Circuit has declared that a strong judicial

9  policy favors settlement of class actions.  <u>Class Plaintiffs v.</u>

10 <u>City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992).

11 Nevertheless, where, as here, "parties reach a settlement

12 agreement prior to class certification, courts must peruse the

13 proposed compromise to ratify both [1] the propriety of the

14 certification and [2] the fairness of the settlement."  <u>Staton v.</u>

15 <u>Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003).

16          In conducting the first part of its inquiry, the court

17 "must pay 'undiluted, even heightened, attention' to class

18 certification requirements" because, unlike in a fully litigated

19 class action suit, the court will not have future opportunities

20 "to adjust the class, informed by the proceedings as they

21 unfold."  <u>Amchem Prods. Inc. v. Windsor</u>, 521 U.S. 591, 620

22 (1997); <u>accord</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th

23 Cir. 1998).  The parties cannot "agree to certify a class that

24 clearly leaves any one requirement unfulfilled," and consequently

25 the court cannot blindly rely on the fact that the parties have

26 stipulated that a class exists for purposes of settlement.  <u>Berry</u>

27 <u>v. Baca</u>, No. 01-02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2,

28 2005); <u>see also</u> <u>Amchem</u>, 521 U.S. at 622 (observing that nowhere

4

does Federal Rule of Civil Procedure 23 say that certification is proper simply because the settlement appears fair).   In conducting the second part of its inquiry, the "court must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . .'"   <u>Staton</u>, 327 F.3d at 952 (quoting <u>Hanlon</u>, 150 F.3d at 1026); <u>see also</u> Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

Procedurally, the approval of a class action settlement occurs in two stages.   In the first stage of the approval process, "'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . . , and authorize[s] notice to be given to the Class.'"   <u>West v. Circle K Stores, Inc.</u>, No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (quoting <u>In re Phenylpropanolamine (PPA) Prods. Liab. Litig.</u>, 227 F.R.D. 553, 556 (W.D. Wash. 2004)).   At the fairness hearing, after notice is given to putative class members, the court entertains any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement.   <u>See</u> <u>Diaz v. Trust Territory of Pac. Islands</u>, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial").   Following the fairness hearing, the court makes a

5

final determination as to whether the parties should be allowed

to settle the class action pursuant to the terms agreed upon.

<u>DIRECTV, Inc.</u>, 221 F.R.D. at 525.

     A.   <u>Final Certification of the Class</u>

       A class action will only be certified if it meets the

four prerequisites identified in Federal Rule of Civil Procedure

23(a) and additionally fits within one of the three subdivisions

of Federal Rule of Civil Procedure 23(b).  Although a district

court has discretion in determining whether the moving party has

satisfied each Rule 23 requirement, <u>Califano v. Yamasaki</u>, 442

U.S. 682, 701 (1979); <u>Montgomery v. Rumsfeld</u>, 572 F.2d 250, 255

(9th Cir. 1978), the court must conduct a rigorous inquiry before

certifying a class.  <u>Gen. Tel. Co. of the Sw. v. Falcon</u>, 457 U.S.

147, 161 (1982); <u>E. Tex. Motor Freight Sys. v. Rodriguez</u>, 431

U.S. 395, 403-05 (1977).

      1.   <u>Rule 23(a)</u>

       Rule 23(a) restricts class actions to cases where

> (1) the class is so numerous that joinder of all members
> is impracticable; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).  These requirements are more commonly

referred to as numerosity, commonality, typicality, and adequacy

of representation, respectively.  <u>Hanlon v. Chrysler Corp.</u>, 150

F.3d 1011, 1019 (9th Cir. 1998).

       In the court's Order granting preliminary approval of

the settlement, the court found that the putative class satisfied

both the numerosity and commonality requirements of Rule 23(a);

1  the court expressed some concern, however, as to whether class

2  counsel had provided sufficient information to demonstrate

3  typicality and adequacy of representation.   Since the court is

4  unaware of any changes that would alter its analysis as to

5  numerosity and commonality, and because the parties indicated at

6  the fairness hearing that they were unaware of any such

7  developments, the court will proceed to evaluate typicality and

8  adequacy of representation for purposes of final certification.

9                    a.   <u>Typicality</u>

10         Rule 23(a) requires that the "claims or defenses of the

11  representative parties [be] typical of the claims or defenses of

12  the class."  Fed. R. Civ. P. 23(a)(3).   Typicality requires that

13  named plaintiffs have claims "reasonably coextensive with those

14  of absent class members," but their claims do not have to be

15  "substantially identical."  <u>Hanlon</u>, 150 F.3d at 1020.   The test

16  for typicality "'is whether other members have the same or

17  similar injury, whether the action is based on conduct which is

18  not unique to the named plaintiffs, and whether other class

19  members have been injured by the same course of conduct.'"  <u>Hanon</u>

20  <u>v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992)

21  (citation omitted).

22         In this case, class counsel first obtained plaintiff's

23  time records, payroll records, and schedules from defendant

24  pursuant to initial disclosure obligations under Federal Rule of

25  Civil Procedure 26.  (Oct. 10, 2008 Poliner Decl. ¶ 3; <u>id.</u> Ex.

26  2.)  In order to assess putative class claims prior to mediation,

27  defendant also provided class counsel with approximately 10,850

28  pages of documents consisting of clock-in/clock-out reports, wage

7

compensation reports, confidential data sheets, and weekly work
schedules of 112 randomly selected putative class members. (Oct.
10, 2008 Poliner Decl. ¶ 4; id. Ex. 3.)

An analysis of plaintiff's records revealed that her
hours worked per day during the relevant period varied from 4.95
to 5.56 hours for an average of 5.18 hours per day. (Id. ¶ 8.)
Plaintiff provides that she would be eligible for "reporting time
pay," therefore, on any day when she worked less than 2.59 hours,
or less than one-half of her average workday. (Id.) Nine such
incidents occurred for a total "reporting time" of 6.72 hours and
reporting-time pay of $45.36 at the applicable wage rate. (Id. ¶
9.) Over the relevant thirty-one month period, plaintiff had an
average reporting time of 0.21 hours per month. (Id. ¶ 16.)

Regarding the 112 servers in the random sample, their
average workdays ranged from 3.6 to 6.07 hours per day for a
sample average of 4.77 hours per day. (Id. ¶ 15.) In a typical
month, a server would have a total of 0.61 hours of reporting
time.[2] (Id. ¶ 16.) Plaintiff provides that most servers in the
sample worked four to five hours per day, like plaintiff. (Id. ¶
15.) Also like plaintiff, servers in the sample had reporting-

---

[2]     This figure was calculated as follows: For the relevant
time period, (a) the average workday for each server in the
sample was calculated; (b) each workday was identified on which a
server worked less than one-half his or her average workday; and
(c) the differences between (a) and (b) for each server were
added together to determine the total reporting time for the
entire sample.  Next, (d) the number of days servers worked per
month was averaged for the entire sample, and (e) the percentage
of days on which reporting-time incidents occurred was averaged
for the entire sample.  By multiplying (d) and (e), one obtains
(f) the average number of days per month on which a server would
accrue reporting time.  Finally, by dividing (c) by (f), one
obtains (g) the average server's monthly reporting time. (See
id. at 4 n.3.)

8

time incidents fairly infrequently, although all but two servers
in the sample had at least some reporting-time incidents. (<u>Id.</u> 5
n.4, ¶ 11.)

For purposes of assessing typicality, these measures
are somewhat problematic.  To calculate the reporting time of the
average server in the sample, plaintiff pooled all of the sample
servers' reporting time and distributed it evenly using the
average days worked per month and the average frequency of
reporting incidents for the entire sample.  <u>See</u> <u>supra</u> note 2.
All of this averaging effectively eliminates any variation that
may exist within the sample.  Measures of variability, rather
than central tendency, are needed to determine whether the
reporting-time injury may be concentrated only in certain servers
rather than incurred by the entire class.  <u>See generally</u> Timothy
C. Urdan, <u>Statistics in Plain English</u> 10 (2005) ("[F]or the same
reason that the mean and median are useful, they can often be
dangerous if we forget that a statistic such as the mean ignores
a lot of information about the distribution, including the great
amount of variety that exists in many distributions.").

The court finds, however, that the lack of measures of
sample variability is not fatal.  First, class counsel's
qualitative description of the data suggests that plaintiff and
the sample servers are fairly homogenous as to their typical
workdays and frequency and extent of reporting-time injuries.
(<u>See</u> Oct. 10, 2008 Poliner Decl. 5 n.4; <u>id.</u> ¶¶ 15, 11.)
Moreover, the court finds no reason to believe that the injury in
this case is correlated with any variable other than hours
worked; by distributing the net payment according to hours worked

during the relevant time period, therefore, awards are likely to be individualized to the injuries of each class member. (See id. ¶ 18.)  This conclusion is bolstered by the absence of a single objection lodged with settlement administrator or at fairness hearing regarding the class-distribution formula for the net payment. (Hoffman Decl. Ex. E.).  Accordingly, the court concludes that the putative class satisfies the typicality requirement.

### b.   Adequacy of Representation

Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To resolve the question of legal adequacy, the court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class? Hanlon, 150 F.3d at 1020.

In its Order granting preliminary approval of the settlement, the court was sufficiently able to inquire into the first question and found that the interests of the named plaintiff and her counsel did not conflict with those of the putative class members.  Since the court is unaware of any changes that would affect this conclusion, and because the parties indicated at the fairness hearing that they were unaware of any such developments, the court will proceed to evaluate whether the named plaintiff and her counsel vigorously litigated this action on behalf of the class.

"Although there are no fixed standards by which 'vigor'

10

can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." <u>Hanlon</u>, 150 F.3d at 1021.  Class counsel's competency with respect to class action litigation is significant.  Specifically, a thorough declaration submitted to the court lists several class action proceedings in both state and federal court in which class counsel served as either lead or co-counsel.[3]  (May 9, 2008 Poliner Decl. ¶ 8.) Moreover, the majority of these class action proceedings resulted in approved settlements.  (<u>Id.</u>)

Probing plaintiff and her counsel's rationale for not pursuing further litigation, however, is inherently more complex. "District courts must be skeptical of some settlement agreements put before them because they are presented with a 'bargain proffered for . . . approval without the benefit of an adversarial investigation.'" <u>Hanlon</u>, 150 F.3d at 1022 (quoting <u>Amchem</u>, 521 U.S. at 620).  This logic is certainly applicable here, as the parties have not conducted formal discovery and the record is devoid of adversarial briefs.  Nonetheless, plaintiff's counsel offers documentation to support the contention that the settlement resulted from vigorous informal investigation and careful consideration of the risks of pursuing litigation.

As mentioned previously, class counsel analyzed

---

[3]     In the last three years alone, class counsel has certified over thirty class action lawsuits that "have involved the failure to pay employees overtime, failure to provide employees with meal and rest breaks, untimely payment of employees' wages upon termination, false and deceptive advertising, and unlawful deductions from tenants' security deposits."  (<u>Id.</u>)

1  plaintiff's time records, payroll records, and schedules.  (Oct.

2  10, 2008 Poliner Decl. ¶ 3; id. Ex. 2.)  Class counsel also

3  obtained and analyzed approximately 10,850 pages of documents

4  consisting of clock-in/clock-out reports, wage compensation

5  reports, confidential data sheets, and weekly work schedules of

6  112 randomly selected putative class members.  (Oct. 10, 2008

7  Poliner Decl. ¶ 4; id. Ex. 3.)  These analyses facilitated

8  extensive mediation between the parties, which was conducted by

9  David A. Rotman, "a prominent mediator with a specialty in

10 employment discrimination cases." Parker v. Foster, No. 05-0748,

11 2006 WL 2085152, at *1 (E.D. Cal. July 26, 2006).  Class counsel,

12 moreover, expended over 250 attorney-hours and 370 paralegal-

13 hours in developing this case, for a total of $202,650 in legal

14 fees and $10,237.78 in costs, although counsel is only requesting

15 $150,000 and $10,000, respectively.  (Oct. 10, 2008 Poliner Decl.

16 ¶¶ 24-26; Poliner Supp. Decl. Ex. A.)

17        Accordingly, the court concludes that the absence of

18 conflicts of interest and the vigor of counsel's representation

19 satisfies Rule 23(a)'s adequacy assessment.

20              2.   Rule 23(b)

21        An action that meets all the prerequisites of Rule

22 23(a) may be maintained as a class action only if it also meets

23 the requirements of one of the three subdivisions of Rule 23(b).

24 Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974).  In this

25 case, plaintiff seeks certification under Rule 23(b)(3), "which

26 is appropriate 'whenever the actual interests of the parties can

27 be served best by settling their differences in a single

28 action.'"  Hanlon, 150 F.3d at 1022 (citation omitted).  A class

action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its Order granting preliminary approval of the settlement, the court found that both prerequisites of Rule 23(b)(3) were satisfied.  The court is unaware of any changes that would affect this conclusion, and the parties indicated at the fairness hearing that they were unaware of any such developments.  Accordingly, since the settlement class satisfies both Rule 23(a) and 23(b)(3), the court will grant final class certification.

> B.   <u>Rule 23(e): Fairness, Adequacy, and Reasonableness of the Settlement</u>

Having determined class treatment to be warranted, the court must now address whether the terms of the parties' settlement is fair, adequate, and reasonable.  In conducting this analysis, the court must balance several factors including

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

<u>Hanlon</u>, 150 F.3d at 1026; <u>see also</u> <u>Molski v. Gleich</u>, 318 F.3d 937, 953-54 (9th Cir. 2003) (noting that a district court need only consider some of these factors--namely, those designed to

protect absentees).

        1.   <u>Terms of the Settlement Agreement</u>

The key terms of the Settlement Agreement are as follows:

(1)  **The Settlement Class:** Class members are all non-exempt employees of defendant who were employed as servers, including server breakers, at any Olive Garden restaurant in California from August 3, 2003, through June 10, 2008. (May 9, 2008 Poliner Decl. Ex. A (Stip. of Settlement & Release ("Settlement Agreement") ¶¶ 4-5).)

(2)  **Notice:** The settlement administrator mailed a notice of pendency of class action, proposed settlement, and hearing date for court approval to class members, by first class mail, within thirty calendar days after the entry of the order granting preliminary approval of the settlement and notice. (<u>Id.</u> ¶ 18.) Included with the notice, the settlement administrator provided class members with a claim form and a request for exclusion. (<u>Id.</u>)

(3)  **Claim Forms:** To receive a portion of the settlement, class members completed a claim form and returned it to the settlement administrator within forty-five calendar days of the day notice was mailed. (<u>Id.</u> ¶¶ 24-25.) If the claim form was not completed in full, the settlement administrator sent one deficiency notice, which gave the claimant fourteen days to send a completed claim form. (<u>Id.</u> ¶ 25.) The settlement administrator mailed a reminder postcard to all class members who had not submitted a claim form within twenty days of the deadline. (<u>Id.</u> ¶ 26.)

(4)  **Requests for Exclusion:** To be excluded from the settlement, class members completed a request for exclusion form and returned it to the settlement administrator within forty-five calendar days of the day notice was mailed. (Hoffman Decl. Ex. A § III.B.) Submitting a request for exclusion form preserved class members' rights to bring their own lawsuits against the defendant. (<u>Id.</u>)

(5)  **Release:** Class members who did not return a completed Request for exclusion form will fully release and discharge defendant and any of its former and present parent companies, subsidiaries, and affiliates, and the officers, directors, employees, partners, representatives, shareholders, agents, attorneys, insurers, successors, and assigns of all such entities, from any and all claims, rights, demands, debts, obligations, guarantees, liabilities, costs, expenses, attorneys' fees, damages, actions, and causes of action of every nature and description, whether known or unknown, contained in or

1     related to the action.   (Settlement Agreement ¶ 14.)

2   (6)   **Total Settlement Amount:** Defendant will contribute $706,525
3         to resolve all issues related to this litigation.   (Mem. in
          Supp. of Final Approval 6:10-16 & nn.6-7.)

4   (7)   **Net Payment:** Defendant will contribute a fund of
          approximately $441,525 for the settlement class.   (<u>Id.</u>)   The
5         net payment is the total settlement amount ($706,525) less
          the attorneys' fees (not to exceed $150,000), the documented
6         litigation costs (not to exceed $10,000), the incentive
          payment to the class representative (not to exceed $5000),
7         the employer's portion of any payroll taxes, and the costs
          of administering in the settlement (not to exceed $70,000).
8         (<u>Id.</u>)

9   (8)   **Individual Payment Amounts:** The individual payment amounts
          will be allocated on a proportional basis according to the
10        number of hours each claimant worked during the class
          period.   (Oct 10, 2008 Poliner Decl. ¶ 18.)   Calculating the
11        "Individual Payment Amount" requires a three-step process.
          First, adding together all of the hours worked by every
12        claimant to determine the "Total Hours Worked."   Next,
          dividing the "Net Payment" by the "Total Hours Worked" to
13        find the "Dollars per Hour Worked."   Finally, multiplying
          the "Dollars per Hours Worked" by the number of hours the
14        individual claimant worked.   (<u>Id.</u>)[4]

15  (9)   **Objection to Settlement:** Class members could object to the
          terms of the settlement by filing a written objection and a
16        notice of intention to appeal at the final fairness hearing
          within forty-five calendar days of the day notice was
17        mailed.   (Hoffman Decl. Ex. A § III.C.)   Objections were
          required to be mailed to class counsel, defendant's counsel,
18        and the Clerk of the Court.   (<u>Id.</u>)   If the court rejected an
          objection, the class member would be bound by the terms of
19        the settlement unless he or she also filed a request for
          exclusion.   (<u>Id.</u>)

20
          2.   <u>Rule 23(e) Factors</u>
21
          a.   <u>Strength of the Plaintiff's Case</u>
22

23   _____

24        [4]     The settlement administrator will calculate Individual
     Payment Amounts twice.   First, he will calculate Individual
25   Payment Amounts assuming every class member opted into the
     settlement and allocate the Net Payment using the three-step
26   process described above.   (Settlement Agreement ¶ 11(c)-(d).)
     Because it is realistic to assume that many class members will
27   not return claim forms, the settlement administrator will also
     calculate the remainder, or the unclaimed portion of the net
28   payment, and allocate it to the claimants using the same
     three-step process.   (<u>Id.</u>)

15

1    Ascertaining the strength of plaintiff's case is
2 difficult due to the early stage at which the parties reached
3 their settlement agreement.  The case was first removed to
4 federal court on September 12, 2007, and within one week
5 defendant filed a motion to dismiss.  Before the motion could be
6 heard, however, plaintiff amended her Complaint on October 26,
7 2007, which deleted certain allegations and added a new claim.
8 Defendant filed a new motion to dismiss the First Amended
9 Complaint and a motion to strike punitive damages on November 8,
10 2007, but before the court could hear the motions the parties
11 began mediation in December 2007.  Not only did the formal
12 discovery process never get underway, but the court also had
13 never issued a status order delineating initial discovery
14 disclosure deadlines.

15    From initial disclosures pursuant to Federal Rule of
16 Civil Procedure 26 and documents produced to facilitate
17 mediation, class counsel was able to determine the incidence and
18 extent of reporting time for plaintiff and a sample of putative
19 class members.  (See Oct. 10, 2008 Poliner Decl. ¶ 4.)  As
20 detailed below, however, whether this analysis demonstrated a
21 remediable claim has been subject to dispute.  See infra
22 Subsection II.B.2.b.  Nonetheless, the paucity of the record
23 ultimately precludes the court from assessing whether plaintiff's
24 case is either strong or weak.  Accordingly, the court will not
25 consider this factor for settlement purposes.

26    b.   Risk, Expense, Complexity, and Likely
27         Duration of Further Litigation
28    While the record precludes determining the strength of

16

1   the plaintiff's case, the absence of formal discovery and

2   briefing does serve to heighten the uncertainty that both parties

3   would face regarding certain legal and factual issues in this

4   action.   For example, during mediation, defendant contended that

5   no private right of action existed under Industrial Welfare

6   Commission Order 5-2001, Cal. Code Regs. tit. 8, § 11070 ("Wage

7   Order 5-2001") (Mem. in Supp. of Final Approval 18:3-5.), and

8   defendant has successfully litigated the issue in this district.

9   See Johnson v. GMRI, Inc., No. 07-0283, 2007 WL 963209, at *3-4

10  (E.D. Cal. Mar. 29, 2007) (granting defendant's motion to dismiss

11  on the ground that "the existence of an administrative remedy

12  precludes a private right of action" under Wage Order 5-2001).

13          Defendant also claimed that approximately forty-six

14  percent of the reporting time plaintiff identified through

15  informal discovery resulted from servers' voluntary early

16  departures.   (Oct. 10, 2008 Poliner Decl. 3 n.2.)   Defendant

17  argued that these voluntary early departures would not constitute

18  a claim under Wage Order 5-2001 because the regulation excluded

19  instances in which employees left work voluntarily, were sent

20  home for disciplinary reasons, or were unable to work due to

21  circumstances beyond defendant's control.   (Id. at 3 n.2.)

22  Plaintiff's analysis, in contrast, appears to define the term

23  "reporting time" to include any shortfall between actual time

24  worked and one-half of a server's average workday. (See id. ¶ 8

25  ("[D]uring her employment period, [plaintiff] worked less than

26  half her average day's work . . . on nine occasions and,

27  therefore, would have been eligible for reporting time pay.").)

28  (But see Mem. in Supp. of Prelim. Approval 2 n.1 (acknowledging

1  that Wage Order 5-2001 excludes from reporting time any work
2  disruption not within the employer's control).)

3       Assuming this case progressed beyond a motion to
4  dismiss, the complexity and duration of further litigation also
5  would be considerable.  There are over 18,000 class members, and
6  completing discovery in a case with such a large class would have
7  been extremely costly.  Accordingly, the court finds that the
8  uncertainty and likely expense and duration of further litigation
9  favor settlement in this case.

10              c.   Risk of Maintaining Class-Action Status
11                   Throughout Trial

12       The court is unaware of any specific difficulty in
13  maintaining class-action status in this case were the matter to
14  continue to trial.  Although plaintiff provides that "[t]here is
15  at least some risk . . . that no class would be certified" (Mem.
16  in Supp. of Final Approval 18 n.15), she does not reference any
17  specific future development that would upset certification.
18  Accordingly, the court will not consider this factor for
19  settlement purposes.  See In re Veritas Software Corp. Sec.
20  Litig., No. 03-0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15,
21  2005) (favoring neither approval nor disapproval of settlement
22  where the court was "unaware of any risk involved in maintaining
23  class action status"), aff'd in relevant part, 496 F.3d 962 (9th
24  Cir. 2007).

25              d.   Amount Offered in Settlement

26       The value of the settlement in this case is $706,525;
27  of this amount, class members will receive a net payment $441,525
28  after attorney's fees ($150,000), costs ($10,000), an incentive

18

payment to the named plaintiff ($5000), employer's payroll taxes ($30,000), and settlement-administration expenses ($70,000) are deducted. (Mem. in Supp. of Final Approval 6:10-16 & nn.6-7.) None of the $706,525 will revert back to defendant, regardless of the number of claims received. (Id. 6:4.)

By the time of the final fairness hearing, 5458 claims had been filed with the settlement administrator; 118 were untimely, but the parties were able to resolve each untimely claim. Forty-four class members disputed the hours recorded on their claim forms, but defendant and the settlement administrator were able to resolve these disputes and update each of these class members' total hours. As a result, each class member will receive an average award of $80. (Oct. 10, 2008 Poliner Decl. ¶ 19.)

According to plaintiff's server-sample analysis, the average injury incurred by each class member was approximately $127.[5] Class members' actual recovery, therefore, appears at least comparable to their injuries and is particularly fair and reasonable in light of the risks and costs of further litigation in this case. See supra Subsection II.B.2.b. Therefore, the court finds that the amount offered favors approving the settlement.

> e.   Extent of Discovery Completed and the Stage
>      of the Proceedings

As reiterated throughout the court's discussion, the

---

[5]   This figure is obtained by multiplying the average monthly reporting time per server, 0.61, by the thirty-one month time period and the applicable minimum wage. (See id. ¶¶ 9, 12.)

1   parties arrived at a settlement very early in this action.

2   Formal discovery had not been scheduled, let alone reasonably

3   developed, and no motions had been adjudicated.  Of course, the

4   court recognizes that early settlements are in many ways

5   commendable.  See Lachance v. Harrington, 965 F. Supp. 630, 644

6   (E.D. Pa. 1997) ("One of the major reasons courts encourage

7   settlement is to reduce the cost of litigation."); see also Fed.

8   R. Civ. P. 16(b) advisory committee's note ("Since it obviously

9   eases crowded court dockets and results in savings to the

10  litigants and the judicial system, settlement should be

11  facilitated at as early a stage of the litigation as possible.").

12  The desire to expeditiously resolve litigation, however, must be

13  "tempered by the need to assure factual fairness and the correct

14  application of legal principles."  Franklin v. Kaypro Corp., 884

15  F.2d 1222, 1225 (9th Cir. 1989).  In contrast to the instant

16  case, a settlement that occurs in an advanced stage of the

17  proceedings "suggests that the parties . . . carefully

18  investigated the claims before reaching resolution."  West v.

19  Circle K Stores, Inc., No. 04-0438, slip op. at 12 (E.D. Cal.

20  Oct. 19, 2006).  Therefore, although this factor is not essential

21  to the settlement of a class action, see Lachance, 965 F. Supp.

22  at 644-45, the court finds that it weighs against settlement in

23  this case.

24                    f.  Experience and Views of Counsel

25       The law firm Westrup Klick LLP, class counsel in this

26  action, has certified over thirty class action lawsuits in the

27  last three years alone.  (May 9, 2008 Poliner Decl. ¶ 8.)  All of

28  these lawsuits have involved labor and employment law, including

20

failure to pay overtime and failure to provide meal and rest breaks. (Id.) (See generally supra Subsection I.A.1.b.) Therefore, class counsel is familiar with the attendant risks of litigating class action suits.

Class counsel, moreover, indicates that it endorses the settlement as fair, adequate, and reasonable. (Mem. in Supp. of Final Approval 21:5-6.) When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits. In re Wash. Pub. Power Supply Sys. Sec. Litig., 720 F. Supp. 1379, 1392 (D. Ariz. 1989) (citing Officers for Justice v. Civil Serv. Comm'n of the City & County of S.F., 688 F.2d 615, 625 (9th Cir. 1982)). Thus, this factor supports approval of the Settlement Agreement.

g.   Presence of a Governmental Participant

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the court's analysis.

h.   Reaction of the Class Members to the Proposed Settlement

Using a mailing list generated by defendant's counsel, the settlement administrator mailed "notice packets" consisting of the court-approved claim forms, exclusion forms, and notice of settlement to 18,286 potential class members. (Hoffman Decl. ¶¶ 6, 8.) Fifty-six additional employees contacted the settlement administrator or class counsel and self-identified as class members. (Id. ¶ 10.) The settlement administrator mailed packets to each of these individuals after defendant confirmed that they were class members. (Id.) When 5088 packets were

21

returned as undeliverable, the settlement administrator performed

a "skip trace" on the addresses using the database Accurint.

(Id. ¶ 9.)  As a result, only 1231 packets were ultimately

undeliverable.  (Id.)  On August 29, 2008, a "reminder postcard"

was mailed to class members who had not responded to the initial

mailing.  (Id. ¶ 11.)

    The notice complied with Federal Rules of Civil

Procedure 23(c)(2) and 23(e).  It provided the best notice

practicable under the circumstances, and it informed potential

class members of the total settlement amount, the method for

calculating the net payment to the class, how individual awards

would be determined, the procedure for disputing defendant's data

regarding hours worked, how to object to or obtain exclusion from

the settlement, the amount of attorneys' fees and costs to be

paid from the settlement, the incentive payment to the named

plaintiff, and the date of the final fairness hearing.  (See id.

Ex. A.)

    The deadline for objecting to the settlement was

September 19, 2008.  (Id. Ex. A. § III.C.)  By that date, no

class member had filed an objection.  (See id. Ex. E.)  "It is

established that the absence of a large number of objections to a

proposed class action settlement raises a strong presumption that

the terms of a proposed class settlement action are favorable to

the class members."  In re Omnivision Techs., Inc., 559 F. Supp.

2d 1036, 1043 (N.D. Cal. 2008) (quoting Nat'l Rural Telecomms.

Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528-29 (C.D. Cal. 2004)).

Therefore, the court finds that this factor weighs in favor of

settlement.

3.   <u>Attorneys' Fees</u>

Federal Rule of Civil Procedure 23(h) provides, "In an action certified as a class action, the court may award reasonable attorneys' fees and nontaxable costs authorized by law or by agreement of the parties . . . ."  To determine attorneys' fees, courts "typically apply either the percentage-of-recovery method or the lodestar method."  <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 300 (3d Cir. 2005) (internal quotations and citation omitted).[6]  The percentage-of-recovery method is favored in common-fund cases because it "allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."  <u>Id.</u>

The Ninth Circuit has noted that attorneys' fees in class actions "range from 20 percent to 30 percent of the fund created."  <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989).  That court has also approved a district court's conclusion that the "'bench mark' percentage for the fee award should be 25 percent."  <u>Id.</u>  This percentage may be adjusted in either direction "to account for any unusual circumstances involved in this case."  <u>Id.</u>  "Courts may observe the following factors when determining whether the benchmark percentage should be adjusted: (1) the result obtained for the

---

[6]     Under the percentage-of-recovery method, the court calculates the fee award by designating a percentage of the total common fund.  <u>Six Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).  Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.  <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir.1989).

1   class; (2) the effort expended by counsel; (3) counsel's

2   experience; (4) counsel's skill; (5) the complexity of the

3   issues; (6) the risks of non-payment assumed by counsel; (7) the

4   reaction of the class; and (8) comparison with counsel's

5   loadstar." In re Heritage Bond Litig., No. 02-1475, 2005 WL

6   1594403, at *18 (C.D. Cal. 2005) (citations omitted).

7        In this case, class counsel requests an award of

8   $150,000, which is 21.5% of the total settlement amount.  (Oct.

9   10, 2008 Poliner Decl. ¶ 13.)  The court finds that the award is

10  reasonable in light of the factors above.  Several of these

11  factors, namely (1), (3), (4), and (7), have already been

12  considered by the court in evaluating the settlement itself, and

13  each was found to favor approval.  See supra Subsections

14  II.B.2.d, f, h.

15       The eighth factor, which compares the percentage

16  requested by counsel to counsel's loadstar, strongly suggests

17  that the requested attorneys' fees in this case are reasonable.

18  Class counsel expended over 250 attorney-hours and 370 paralegal-

19  hours in developing this case, which included reviewing and

20  analyzing over 10,000 pages of documents, interviewing putative

21  class members, and engaging in mediation and settlement

22  negotiations.  (Oct. 10, 2008 Poliner Decl. ¶¶ 22-24; May 9, 2008

23  Poliner Decl. ¶ 4.)  Under the applicable hourly rates charged by

24  class counsel, these hours yield a total of $202,650 in legal

25  fees.  (Id. ¶¶ 24-26.)  Thus, the lodestar calculation indicates

26  that the requested attorneys' fees compensate counsel to a degree

27  significantly lower than its normal rate.  This reduction appears

28  appropriate in light of the early stage at which settlement was

24

1   reached and the absence of any formal discovery or adjudicated

2   motions in this case.  Accordingly, the court will allow the

3   award of attorneys' fees in the amount requested.

4          4.   Costs

5          "There is no doubt that an attorney who has created a

6   common fund for the benefit of the class is entitled to

7   reimbursement of reasonable litigation expenses from that fund."

8   In re Heritage Bond Litig., 2005 WL 1594403, at *23 (quoting In

9   re Gen. Instruments Sec. Litig., 209 F. Supp. 2d 423, 434 (E.D.

10  Pa. 2001)).  In response to the court's request at the fairness

11  hearing, class counsel has submitted a list of itemized costs

12  relating to mediation fees, courier services, client-database

13  maintenance, legal research, and filings.  (See Poliner Supp.

14  Decl. Ex. A.)  These expenses total $10,237.78.  (Id.)  Pursuant

15  to the Settlement Agreement, however, class counsel has agreed to

16  request no more than $10,000 for reimbursement of these costs.

17  (Oct. 10, 2008 Poliner Decl. ¶ 25.)  The court finds that these

18  are reasonable litigation expenses, and it therefore will grant

19  class counsel's request for compensation in the amount of

20  $10,000.

21         The settlement administrator, Simpluris Inc., also

22  requests $70,000 as payment for the costs incurred in

23  administering the settlement.  Simpluris originally bid its

24  services at $83,297.50, but after negotiations with the parties'

25  counsel, Simpluris reduced its bid to a flat-fee of $70,000,

26  which also covers costs yet to be incurred such as the

27  calculation of settlement checks, the issuance and mailing of the

28  settlement checks, and the necessary tax reporting on the

1  payments.  (Hoffman Decl. ¶ 20.)  Because this relief could not
2  be dispersed to the class without the efforts of the settlement
3  administrator, and the amount requested appears reasonable given
4  the size of the class, the court will grant the $70,000 payment
5  requested.

6                    5.   Incentive Payment to Named Plaintiff

7             The settlement proposes a $5000 "incentive payment" for
8  the named plaintiff.  The court recognizes that "a class
9  representative is entitled to some compensation for the expense
10 he or she incurred on behalf of the class lest individuals find
11 insufficient inducement to lend their names and services to the
12 class action."  In re Oracle Secs. Litig., No. 90-0931, 1994 WL
13 502054, at *1 (N.D. Cal. June 18, 1994) (citing In re Continental
14 Ill. Secs. Litig., 962 F.2d 566, 571 (7th Cir. 1992)).  "Such
15 payments, however, must be reasonable in light of applicable
16 circumstances, and not 'unfair' to other class members."  Smith
17 v. Tower Loan of Miss., Inc., 216 F.R.D. 338, 368 (S.D. Miss.
18 2003) (citation omitted); see also In re Oracle Secs. Litig.,
19 1994 WL 502054 at *1 (reducing requested payment of $2,500 to
20 $500 for spending "between two and five hours undergoing
21 depositions and . . . respond[ing] to a few narrow document
22 discovery requests").

23            The proposed payment is not particularly unfair to
24 other class members, given that it will not significantly reduce
25 the amount of settlement funds available to the rest of the
26 class.  In addition, none of the class members have objected to
27 the amount of additional compensation sought by the named
28 plaintiff.  Class counsel also provides that she dedicated over

                                26

1  fifty hours to prosecuting the case, which included locating and
2  meeting with other class members and participating in mediation
3  discussions.  (Oct. 10, 2008 Poliner Decl. ¶ 21.)  Accordingly,
4  the court finds the $5000 incentive payment to the named
5  plaintiff to be reasonable.
6  III. <u>Conclusion</u>

7           Based on the foregoing, the court grants final
8  certification of the settlement class and approves the settlement
9  set forth in the Settlement Agreement as fair, reasonable, and
10 adequate.  The court finds an award of $150,000 to be an
11 appropriate amount for attorneys' fees and that the costs and
12 incentive payment requested are reasonable and fair.
13 Consummation of the settlement in accordance with the terms and
14 provisions of the Settlement Agreement is therefore approved, and
15 the definitions provided in the settlement Agreement shall apply
16 to the terms used herein.  The Settlement Agreement shall be
17 binding upon all members of the class who did not timely elect to
18 be excluded.

19          IT IS THEREFORE ORDERED that plaintiff's motion for
20 final approval of class action settlement be, and the same hereby
21 is, GRANTED.

22          IT IS FURTHER ORDERED that:

23          (1)  for the purpose of approving this settlement only
24 and with no other effect on any pending or future litigation,
25 good cause exists to certify the following class: All servers,
26 including server breakers, who work or worked for defendant at
27 any Olive Garden restaurants in the state of California from
28 August 3, 2003, through June 10, 2008.  Specifically, the court

27

finds that:

(a) the settlement class is so numerous as to make joinder of all class members impracticable;

(b) there are common questions of law and fact as to the settlement class;

(c) named plaintiff's claims are typical of the claims of the members of the settlement class;

(d) class counsel will fairly and adequately represent and protect the interests of settlement class;

(e) questions of law and fact common to the members of the settlement class predominate over any questions affecting any individual member, and a class action is the superior method for pursuing the claims at issue here;

(2) the notice provided to the settlement class fully complied with the requirements of due process, constituted the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit;

(3) defendant shall fund the settlement within twenty (20) days after entry of the Final Approval Order pursuant to the terms of the Settlement Agreement;

(4) no later than fifteen (15) days after receipt of the funds from defendant, the settlement administrator shall mail the settlement payments to each class member who timely submitted a completed claim form in accordance with the terms of the Settlement Agreement;

(5) no members of the settlement class have objected;

(6) sixty-one (61) class members timely opted out of

the settlement;

(7) class members who have not timely opted out of the settlement are permanently enjoined and barred from commencing or prosecuting any action asserting any of the Released Claims defined in Settlement Agreement ¶¶ 14 and 15, either directly, representatively, derivatively, or in any other capacity, whether by complaint, counterclaim, defense, or otherwise, and this Final Approval Order shall have the force and effect of res judicata as to the class;

(8) class counsel is entitled to attorneys' fees and costs in the amount of $160,000;

(9) the settlement administrator is entitled to a payment of $70,000 for its services;

(10) the named plaintiff is entitled to an incentive payment of $5000;

(11) the settlement is not an admission by defendant, nor is this Final Approval Order a finding of the validity of any claims asserted in this action or any wrongdoing by defendant;

(12) the settlement is not an admission or finding that the certification of the class is proper for any purpose or proceeding other than for settlement purposes in the present case;

(13) neither this Order, the settlement, any judgment, nor any document, statement, proceeding, or conduct related to the settlement shall be construed as, or deemed to be evidence of, or an admission or concession with regard to, the denials or defenses by defendant, and shall not be offered in evidence in any action or proceeding against the parties in any court,

1 administrative agency, or other tribunal for any purpose

2 whatsoever other than to enforce the provisions of this Order;

3        (14) this Order, the settlement and exhibits, and any

4 other papers and records on file in this case may be used in any

5 and all proceedings to enforce any or all terms of the Settlement

6 Agreement or in defense of any claims released or barred by the

7 Settlement Agreement;

8        (15) this action is dismissed with prejudice; provided,

9 however, and without affecting the finality of this Order, the

10 court retains continuing jurisdiction over this action, the

11 parties, and class members to determine all matters relating in

12 any way to the Final Approval Order, the Preliminary Approval

13 Order, or the Settlement Agreement.

14        LET JUDGMENT BE ENTERED ACCORDINGLY.

15 DATED:  November 12, 2008

16

17 _____

18 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28